8 0 9 0 6 5 6, people of the state of Illinois, Emily, Brett, Thomas, Lee, O'Rourke, versus Damaris, Appellate Defendant, Ms. Santiago-Durango. May it proceed. Good afternoon, Your Honors. Counsel. May it please the Court, I am Santiago-Durango of the Office of the State Appellate Defender, and I represent the Appellate Defendant in this case, Mr. Damaris Kelly. This is an appeal from a stipulated trial conviction of armed robbery by accountability of a juvenile who was 16 years old at the time. His sentence was enhanced by 15 years due to a mandatory gun enhancement provision of the armed robbery statute. This appeal deals primarily with a challenge to that gun enhancement as it applies to juveniles. The charges in this case of armed robbery by accountability arose from the armed robbery of a gas station in Peoria. And what happened was that three boys robbed that gas station. My client, Mr. Kelly, was unarmed in that robbery. He was 16 years old at the time. The young man who wielded the alleged weapon, firearm, was 13 years old. And there was another boy, who I believe was 11 years old, who I don't believe was charged with any offense. After my client was charged with armed robbery, he was charged as an adult under the automatic transfer provisions of the Juvenile Court Act. He was tried as an adult. He entered into a negotiated plea agreement with the state, where the state agreed to an 8-year sentencing cap. The parties agreed to that. The guilty plea hearing was held. And then when the matter proceeded to sentencing, an issue was raised as to whether the 15-year enhancement applied to the juvenile defendant. Ultimately, the trial court decided that it did, and vacated the plea agreement in the belief that the minimum sentence, once you added the 15-year enhancement to the class X offense minimum of 6 years, was 21 years. The defendant appealed. And on appeal, I have raised three issues for him. One is whether the 15-year enhancement under the armed robbery statute is disproportionate and unconstitutional when applied to a juvenile defendant. The second issue is whether the state constructively narrowed the charge when it entered into the plea agreement to the lesser included offense of armed robbery. Therefore, that plea should not have been vacated in the trial court. And the third issue I have raised for Mr. Kelly is whether the state at the stipulated trial adequately proved that a firearm was used in this case. Now, the first issue I raised, as I just mentioned, is whether the 15-year enhancement of the armed robbery statute is unconstitutionally disproportionate when applied to juveniles. My argument relies heavily on the Supreme Court of the United States' recent decision in Graham v. Florida. In that decision, the Supreme Court underscored again that non-homicide juveniles, the punishment for those juveniles must be tailored differently than the punishment for adults committing the same offense. And that is because juveniles are considered to be less culpable and have a greater capacity for change, that is, rehabilitation. Unfortunately, the way that the statutory provisions converge in Illinois when you put together the automatic transfer statute, the accountability statute, and the gun enhancement provision, a judge is given no latitude to consider whether the punishment for the juvenile should be less than is permitted under the gun enhancement statute. And the argument is that under Graham v. Florida, that makes the punishment disproportionate because the judge should be able to consider the unique characteristics of juveniles in imposing a sentence. In this case, the parties agreed to an eight-year cap originally when they entered the plea of guilty. Considering that cap, and then subsequently at sentencing, the parties, including the state, agreed that a six-year sentence would be adequate while recognizing that the judge was likely to impose the 15-year enhancement. When you consider the eight-year cap, the recommendation for six years, and the juvenile's limited criminal history, nonviolent, the 21-year sentence that he got is shocking and disproportionate to the offense that he committed. Under these principles, we are asking the court to declare the gun enhancement as being disproportionate in this case as applied to the juvenile defendant. The second issue I have raised with the defendant is whether the plea agreement with the eight-year cap should have remained in place because the state constructively narrowed the indictment from armed robbery with a firearm to armed robbery with a dangerous weapon. The armed robbery with a firearm statute is the part of the statute that requires a 15-year enhancement. Robbery with a dangerous weapon is a normal Class X offense that does not require the enhancement. Therefore, the eight-year cap would have been fine under the dangerous weapon portion, provision of the statute. The argument is that when the state agreed to the eight-year cap, it constructively narrowed the indictment to robbery with a dangerous weapon, and that would have been a valid sentence. Now, the constructive narrowing of an indictment does not require an express change of the indictment, and it pertains to the state's power to negotiate lesser charges. The state clearly has that power in negotiating plea agreements, and in fact, the state is arguing that it has that power in similar circumstances in the Supreme Court of Illinois at the moment. They had their oral argument on March 15th, and the state argued that it should be able to bargain away the mandatory gun enhancements in plea negotiations. Because the state constructively narrowed the indictment by agreeing to the eight-year cap, we're asking this court to vacate the 21-year sentence which includes the 15-year mandatory gun enhancement, and to reimpose the plea agreement and remand this cause for resentencing within the cap agreement sentencing range of 12 to 12 years. The third issue that we have raised for Mr. Kelly is whether the state proved that the principal, Mr. Shaheim Jappai, actually wielded a firearm during the robbery. The use of a firearm, because it increases the sentencing range, is an apprentice factor. Therefore, the state had to prove this factor beyond a reasonable doubt. There's a statutory definition for firearms which states that it would be a device designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas. At no point in the proceedings did the state prove these elements. They simply referred to it as a gun. There is no presumption that it was a gun. There is no mandatory presumption, and there can be no mandatory presumption, that simply because they referred to it as a gun, that was sufficient to prove this charge, this enhancing element, beyond a reasonable doubt. In addition, the court takes an objective approach as to whether it was proven. It does not depend on what the victim perceived the device to be. In this case, it's clear that if a jury would have been presented with a jury instruction asking it to find whether the state proved these elements, it would have been unable to do so because the state did not prove any of these elements required to show that the device was a firearm. Under the statute. Therefore, we are asking this court to reduce the conviction of armed robbery with a firearm to armed robbery with a dangerous weapon and to remand this cause for resentencing within the normal class X range that would apply to the lesser offense of armed robbery with a dangerous weapon. I have a question. Maybe it's a silly one. Why wasn't there a motion to withdraw the guilty plea? What happened was that at the sentencing after the guilty plea, the defense counsel and the prosecutor had concerns about whether the gun enhancement provision, the sentencing gun enhancement provision applied. And the judge allowed the defense counsel to file a motion regarding that gun enhancement, the sentencing gun enhancement, whether it applied to the juvenile defendant. And what happened was that the defense counsel filed a motion saying it should not apply under accountability principles. However, the Supreme Court, our Supreme Court in People v. Rodriguez, ruled that it does apply. The sentencing enhancement applies under accountability principles. Therefore, since it applied, the court on its own vacated the plea, believing that the 15-year sentencing gun enhancement applied in the case. The state did not file a motion to vacate the plea. Okay, vacated the guilty plea. The court did on its own motion. Then did this go to trial? They held a stipulated bench trial in which the defense counsel tried to preserve the sentencing issue for review. So at the time of the stipulated bench trial, there was no 8-year cap? No, there was no 8-year cap. And my argument is that it should never have gone that far because by agreeing to the 8-year cap at the plea bargaining stage of the proceeding… Was there a factual basis recited at that time? There was, Your Honor. But it's not the plea, the factual plea that controls. It's the charge that the conviction would rest on. And the argument is that in this case, the tacit charge, the implicit charge… Were the stipulated facts the same as the actual basis recited? Very similar. They used the term gun. And the argument there is that the… Just the use of a gun… Part of the difficulty here is that Peoria County, for some reason, the 5-15-25 enhancements or whatever, their indictments, their juvenile complaints, don't always mirror the language of the statute. And in this case, they call it a dangerous weapon, a handgun. And that's not really in keeping with the statute. You're correct, Your Honor. I call it a hybrid. Right. It's either a dangerous weapon, other than a firearm, or under subsection 2, a firearm. That's correct, Your Honor. And here it is charged as a hybrid. Yes. All right. And that's the basis of your request for us to reduce the charge. Yes. It's within the charging instrument. The reduced charge is contained within the charging instrument. All right. Thank you for indulging my question. Thank you, Your Honor. Any further questions? Thank you. Counsel? Thank you. Good afternoon, Your Honor, Counsel. Turning to the first point regarding the application of Graham v. Florida. That case, as we set forth in our brief, was limited to the question of whether a juvenile sentenced to life without the possibility of parole was constitutional. And the court answered that it was not. However, it clearly stated that if the juvenile had the possibility of parole, that he could theoretically even spend the rest of his life in prison  So we believe that the application of Graham to this case would be, is not essentially trying to fit a square peg into a round hole. As to the second point, the constructive and narrowing of the plea agreement, there is no evidence that the state intended, either by implication or overtly, to amend the indictment. It said when they went to the guilty plea hearing, initially, they said this is what the indictment is. Is this what it is? Yes, it is. And they went to proceed it. There was no other agreement. They even said that. No other agreement. So to suggest that the state intended or constructively changed the indictment when there is no evidence to support that, I believe is incorrect. Finally, the firearm argument, it was a stipulated bench trial. It was allowed to preserve any issues. It did not raise the issue of whether a firearm is, saying the gun, revolver, handgun, those were the terms used. As I set forth in a brief, the definition of a handgun is a firearm. A reasonable jury, having been told handgun, could infer that it is a firearm. So I believe the rest of our brief addresses the issues that are raised, so unless there are other questions. Thank you. Counsel? Thank you, Your Honor. In addressing the question of whether Graham just applies to situations where juveniles are sentenced to life without parole, I believe the state is reading that authority too narrowly. If the difference between juveniles and adults is contained, if the discussion in their case about the difference between juveniles and adults is disregarded, really what would be the need for a juvenile system at all? Clearly we have a juvenile system because juveniles are different than adults, and Graham underscores that point again. The state's reading of Graham is much too narrow. The discussion of the differences between juveniles and adults is very elaborate and illuminating in that case, and it's not limited just to the situation where a juvenile is sentenced to life without parole. Regarding the question of the constructive amendment, constructive amendments many times are not intended. That's why they are constructive amendments. The Supreme Court of Illinois in People v. Henderson approved of a constructive, inadvertent is what they called it, constructive amendment that narrowed the charge in that case. So the question of whether the state intended to or whether there had to be an express amendment is not a bar to finding that there was a constructive amendment. We haven't had any cases similar to this though, have we? The closest one I could find was People v. Henderson. Constructive amendments are mostly a creature of the federal courts, but the principle is constitutional. And the United States Supreme Court in Sterome first addressed the constructive amendment principle, and it's a constitutional question. Regarding the firearm issue, whether the state proved it sufficiently or whether it was preserved sufficiently, even when it was a stipulated trial, the state needs to prove the elements beyond a reasonable doubt. This is an element that needed to be proved beyond a reasonable doubt because it was an apprendee element that enhanced the possible sentence beyond statutory maximum. Therefore, it cannot be presumed that the element, the elements of what constitutes firearm was met simply because the word gun was used. If a jury would have been asked to find the particular elements, statutory elements required to be found in order to find that a firearm was used in the armed robbery, they would not have been able to do so in this case because they were just... What's the basis to conclude it was a dangerous weapon? What I'm asking for is a reduction to the normal. Are you conceding that the factual basis, or excuse me, the stipulated evidence established it was a dangerous weapon? There's case law saying that something that looks like a gun may be considered a bludgeon. And in this case... Is there enough there? Well, I'm not going to concede there's enough there. If this were to be remanded, that would be an issue I believe that should be explored. But I'm not going to concede that there was even enough for that because it may not... The description of the gun was so limited that it's very hard to tell whether it could have even been used as a... But yet you're not asking us to vacate the conviction based on reasonable doubt. No, I've asked for the court to remand the case back. For? For a sentencing within the plea agreement that the parties had agreed to. All right. The court has no further questions. Thank you, Your Honor. We ask that the sentence be vacated, the enhancement be vacated, and this cause be remanded for consideration by the trial court without the enhanced sentence. Thank you, Your Honor. Thank you, Counsel. The court will take this matter under advisement. The rule would dispatch. We'll take a short recess now for a panel change. Thank you.